UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        )
VITAUTUS KILTINIVICHIOUS,                               )
                                                        )
                        Petitioner,                     )           OPINION AND ORDER
                                                        )
        -against-                                       )           08 Civ. 5640 (KMW)
                                                        )           98 Cr. 737 (KMW)
UNITED STATES OF AMERICA,                               )
                                                        )
                        Respondent.                     )
--------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

        Pro se Petitioner Vitautus Kiltinivichious ("Petitioner") petitions for a writ of habeas

corpus pursuant to 28 U.S.C. § 2255 ("Section 2255"), asking the Court to vacate, set aside, or

correct his sentence on the grounds that: (1) his trial counsel provided ineffective assistance; (2)

his appellate counsel provided ineffective assistance; (3) he was denied substantive and

procedural due process when this Court found that he was competent to stand trial; and (4) he is

entitled to a new trial based on the Government's violation of its Brady and Giglio obligations by

failing to turn over specific evidence to the defense.

        For the reasons set forth below, the Court DENIES the petition.

I.      Factual Background

     A.  Trial and Crimes of Conviction

        On December 14, 2000, after a ten-week trial, a jury convicted Petitioner on seven counts

of racketeering: (1) participating in a racketeering enterprise, in violation of 18 U.S.C. § 1962(c)

(Count 1); (2) participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d)

(Count 2); (3) conspiring to extort and extorting the owners, operators, and employees of

businesses that transported women from New York to clubs in New Jersey (where the women performed as exotic dancers), in violation of 18 U.S.C. §§ 1951 and 1952 (Counts 11 and 12); (4) conspiring to commit arson in connection with the destruction of motor vehicles used to transport the women, in violation of 18 U.S.C. § 844(i) and (n) (Count 13); and (5) conspiring to extort and extorting Ernest Malamoud, a Russian immigrant businessman, in violation of 18 U.S.C. §§ 1951 and 1952 (Counts 14 and 15).

    B.  Adjudication of Competency Prior to Sentencing

Following Petitioner's conviction, and prior to sentencing, defense counsel raised the question of whether Petitioner was mentally competent.  In response, the Court took several steps to determine Petitioner's competency, both at the time of trial and for purposes of sentencing.

After trial, Petitioner asked to proceed pro se with sentencing.  The Court appointed an attorney, Lee Ginsburg, to advise Petitioner with respect to his request to proceed pro se.  At a conference on March 27, 2001, Mr. Ginsburg, as well as Petitioner's trial counsel, Robert Krakow, expressed to the Court their concern about Petitioner's competency.  Mr. Ginsburg and Mr. Krakow informed the Court that Petitioner had stated that (1) God had directed him to make certain case-related decisions throughout the criminal proceedings, and (2) God was directing him to proceed pro se for sentencing.[1]  At counsel's request, the Court ordered a psychological evaluation of Petitioner pursuant to 18 U.S.C. § 4244(a), which provides for an evaluation of a convicted defendant for whom "there is a reasonable cause to believe . . . may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility."

---

[1] On March 16, 2001, prison officials sent a letter to the Court stating that Petitioner was being prescribed psychiatric medication.

Pursuant to the Court's order, two specialists from the Bureau of Prison (BOP), forensic psychologist Dr. Thomas Patenaude and psychiatrist Dr. James Fletcher, evaluated Petitioner at FMC-Devens.  Dr. Patenaude completed a written report, in which he found that Petitioner demonstrated "exaggerated symptoms of mental illness."  Dr. Patenaude also found that Petitioner "attempted to present himself as grossly psychotic which was inconsistent with his actual clinical presentation," and that Petitioner "alluded that by appearing severely mentally ill," he might be able to lessen his prison sentence.  Dr. Patenaude concluded that Petitioner was "not suffering from a mental disease" that required treatment at a special medical facility.  (Patenaude Report at 9.)  Dr. Patenaude's report was provided to all counsel and to the Court.[2]

Thereafter, Petitioner's counsel asked the Court to appoint a psychological specialist to assist counsel in interpreting Dr. Patenaude's report and in preparing for the competency hearing. On August 17, 2002, the Court granted counsel's request.  Pursuant to the Court's order, counsel retained Dr. Sanford L. Drob to review Dr. Patenaude's report and to assist in preparing for the competency hearing.  Dr. Drob provided to Petitioner's counsel a report that reviewed Dr. Patenaude's findings as to Petitioner's medical condition.

On January 24, 2003, the Court held the first competency hearing,[3] which was limited to the issue of Petitioner's <u>current</u> mental state.  At that hearing, Dr. Patenaude and Dr. Fletcher testified extensively about the conclusions of their psychological evaluation of Petitioner. Petitioner's counsel conducted detailed cross-examination of both experts.

---

[2] Dr. Fletcher did not complete a written report.

[3] Prior to the hearing, the Court granted Mr. Krakow's request to be relieved as counsel.  The Court appointed Mr. Ginsburg, who had advised Petitioner about the application to proceed <u>pro se</u>, to represent Petitioner in the competency proceedings and for all other pending matters.

At the conclusion of the hearing, the Court reserved judgment on the issue of Petitioner's competency and permitted additional submissions from the parties. Petitioner's counsel then asked the Court to appoint an independent psychological expert to evaluate Petitioner. The Government objected. The Court granted the request and ordered an independent psychological expert, Dr. Thomas Kucharski,[4] to evaluate (1) Petitioner's competency at the time of trial, and (2) Petitioner's competency to proceed with sentencing. Dr. Kucharski evaluated Petitioner in April 2003. Although he disagreed with some findings made by Dr. Patenaude and Dr. Fletcher, Dr. Kucharski concluded that Petitioner was competent both (1) at the time of trial, and (2) for purposes of sentencing.

On April 25, 2003, the Court held further proceedings regarding Petitioner's mental condition and competency. Based on all of the evidence in the record, the Court concluded that Petitioner was competent (1) at the time of trial and (2) for purposes of sentencing.

C.  Sentencing and Post-Sentencing Proceedings

Following the Court's decision on Petitioner's competency, the parties proceeded with sentencing and the post-conviction appellate process.

On September 8, 2003, this Court sentenced Petitioner to concurrent sentences of 188 months incarceration for each count on which Petitioner was convicted. Petitioner appealed the conviction and sentence on numerous grounds, but did not challenge the Court's finding on Petitioner's competency.[5]

---

[4] Petitioner's counsel initially suggested that Dr. Drob conduct this psychological evaluation. The Court instead appointed Dr. Naomi Goldstein, a respected psychological expert with whom the Court had previous experience. The Court later replaced Dr. Goldstein with Dr. Kucharski.

[5] Mr. Ginsburg withdrew as counsel following sentencing. The Court appointed Eileen Shapiro to represent Petitioner in his appeal.

On April 1, 2005, the Court of Appeals for the Second Circuit affirmed Petitioner's conviction, and remanded the case for a clarification on the appropriateness of Petitioner's sentence in light of the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005).

On February 10, 2006, after accepting supplemental briefing and hearing oral argument from the parties, the Court issued an order declining to modify Petitioner's sentence. Petitioner appealed the Court's decision; on December 28, 2006, the Second Circuit affirmed the Court's ruling.

On December 18, 2003, during the pendency of Petitioner's appeal, the BOP sent the Court a letter stating that Dr. Patenaude was under investigation for falsifying patient evaluations. Due to a clerical error, that letter did not reach chambers until July 2008. The letter, from David L. Winn, the warden at FMC-Devens, stated that:

> [A]n investigation by the Bureau of Prisons Office of Internal Affairs recently revealed that there is sufficient evidence to question the credibility and accuracy of a psychological evaluation conducted by Dr. Thomas Patenaude. This internal investigation could call into question the credibility of other psychological evaluations conducted by the psychologist.

(Pet'r Aff. Ex. 4, D.E. 3 under No. 08 Civ. 5640 (hereinafter, the "Winn Letter").) The BOP Office of Internal Affairs did not specifically investigate Dr. Patenaude's evaluation of Petitioner.

When the Court received the Winn Letter, the Court sought to determine whether the new information about Dr. Patenaude should affect the Court's finding on Petitioner's competency. The Court directed Dr. Kucharski to notify the Court, in writing, whether his conclusions about Petitioner's competency would have been different absent consideration of Dr. Patenaude's

5

report or any other information provided by Dr. Patenaude.  (Order, July 31, 2008, D.E. 329

under No. 98 Cr. 727.)  The Court also directed Dr. Kucharski to interview Petitioner's trial

counsel and, if necessary, to submit to the Court any amendment or addendum to his evaluation

report.  (Id.)  On September 15, 2008, Dr. Kucharski submitted a supplemental report that

reaffirmed his original conclusion, as stated in his April 2003 report, that Petitioner was

competent to stand trial and to proceed with sentencing.  Dr. Kucharski noted that Dr.

Patenaude's reported findings had "little to no bearing on the opinion" that Dr. Kucharski

provided to the Court in April 2003, and that his opinion on Petitioner's mental condition

"remains unchanged."  (Supplemental Report, D.E. 334 under No. 98 Cr. 727.)

      Petitioner now seeks a writ of habeas corpus.[6]

II.     Analysis of Petitioner's Claims

   A.  An Evidentiary Hearing Is Not Warranted

      Section 2255 of Title 28 of the United States Code requires that a court hold an

evidentiary hearing on a petition for a writ of habeas corpus, unless the motions and records in

the case establish that the petitioner is not entitled to relief.  "It is within a district court's

discretion to determine whether an evidentiary hearing is warranted."  Bennett v. United States,

No. 03-1852, 2004 WL 2711064, at *3 (S.D.N.Y. Nov. 23, 2004).  An evidentiary hearing is not

warranted where the "files and records of the case conclusively show" that the petition is without

---

[6] Petitioner's judgment of conviction became final when the United States Supreme Court denied
his petition for a writ of certiorari on June 4, 2007.  See Kiltinivichious v. United States, 127 S.
Ct. 2921 (2007).  The original petition for a writ of habeas corpus was dated June 2, 2008, and
postmarked June 4, 2008.  Petitioner's habeas petition was thus timely filed pursuant to the
applicable one-year statute of limitations.  See 28 U.S.C. § 2255(f)(1); see also Clay v. United
States, 537 U.S. 522, 527 (2003) ("Finality attaches when [the United States Supreme] Court . . .
denies a petition for a writ of certiorari."); Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001)
(discussing "prison mailbox rule" for filing of habeas petitions).

merit.  Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (quoting 28 U.S.C. § 2255(b));

see also Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (noting that Second Circuit

"precedent disapproves of summary dismissal of petitions where factual issues exist, but it

permits a 'middle road' of deciding disputed facts on the basis of written submissions") (citation

omitted).  To obtain a hearing, "a petitioner 'must demonstrate a colorable claim,' and the court

must evaluate whether a hearing would 'offer any reasonable chance of altering its view of the

facts.'"  Bennett, 2004 WL 2711064, at *3 (quoting Chang, 250 F.3d at 84, 86).

An evidentiary hearing is not warranted for the instant petition.  As discussed below, the

briefs and supporting record make clear that no factual disputes exist that would warrant a

hearing, and that the petition is without merit.

## B. Ineffective Assistance of Trial Counsel

Petitioner raises claims of ineffective assistance of trial counsel with respect to both Mr.

Krakow and Mr. Ginsburg.  Petitioner claims that Mr. Krakow failed: (1) to investigate and

obtain Petitioner's 1989 political asylum application; (2) to independently translate the

September 1997 "wiretap" recording of Ernest Malamoud (a victim in the case), or to object to

the admission and authentication of the recording; and (3) to sufficiently investigate Petitioner's

mental condition, or to provide information on Petitioner's mental condition to Mr. Ginsburg

when Mr. Ginsburg was substituted as counsel.

Petitioner also argues that Mr. Ginsburg failed to call witnesses to testify about

Petitioner's competency, and to utilize available evidence on the matter.

As discussed below, Petitioner's claims of ineffective assistance of counsel with respect

to Mr. Krakow and Mr. Ginsburg are without merit.  There is no evidence that (1) counsel's

performance fell below an objective standard of reasonableness under prevailing professional

7

norms, or (2) a reasonable probability exists that, but for counsel's purported errors, the result of the proceedings would have been different.

      1.  Legal standard

To prevail on a claim for ineffective assistance of counsel, a defendant must satisfy both prongs of the test set forth by the Supreme Court in Strickland v. Washington: (1) deficient performance by counsel; and (2) prejudice.  466 U.S. 668, 694 (1984).  To establish deficient performance, Petitioner must show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The proper measure of attorney performance is reasonableness under "prevailing professional norms," to be judged pursuant to an objective standard.  Id. at 688; Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005).  For this first prong of the Strickland test, there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance," and "judicial scrutiny of counsel's performance must be highly deferential."  Strickland, 466 U.S. at 689.  A court should thus avoid "second-guessing" counsel's assistance after conviction, making "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. (citation omitted); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

To establish prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006); Henry, 409 F.3d at 63-64.

If a defendant makes an inadequate showing on either prong of the Strickland test, the court need not address the second prong.  Strickland, 466 U.S. at 697.

2. <u>Application of Legal Standard to Facts</u>

a. <u>Petitioner's 1989 Political Asylum Application</u>

Petitioner argues that Mr. Krakow's failure to obtain Petitioner's 1989 asylum application and to discuss its contents with Petitioner prior to trial constituted ineffective assistance of counsel. Petitioner argues that, as a result of this failure, the Government was able to use the document at trial (1) to impeach Petitioner during cross-examination, and (2) to establish that Petitioner had committed perjury, specifically with respect to his reason for leaving Lithuania in 1989. The Court finds no merit to Petitioner's claim.

Petitioner testified at trial that he had been forced to leave Lithuania in 1989 to escape from Russian organized crime members who were extorting him. The Government impeached Petitioner on cross-examination by presenting the 1989 asylum application, in which Petitioner stated that he left Lithuania to evade arrest for destroying his Soviet army draft card. In this case, Petitioner possessed <u>firsthand</u> knowledge of the relevant facts – that is, the true circumstances of his departure from Lithuania, as well as the contents of the 1989 asylum application.

Counsel's conduct on this matter did not fall below the objective reasonableness standard applied to a claim of ineffective assistance of counsel. <u>See</u> <u>Strickland</u>, 466 U.S. at 688; <u>Henry</u>, 409 F.3d at 63. It was proper for counsel to rely on Petitioner's statements regarding Petitioner's departure from Lithuania, and not to seek supporting documentation, such as the 1989 asylum application.[7] It was ultimately Petitioner, <u>not</u> counsel, who was responsible for Petitioner's untruthful testimony, and the consequent impeachment on cross-examination. Mr. Krakow thus did not provide ineffective assistance of counsel.

---

[7] Petitioner's departure from Lithuania was, in any event, ancillary to the criminal charges.

Petitioner also has not shown that he was prejudiced by counsel's performance on the matter of the 1989 asylum application.  The Court found that Petitioner's testimony at trial was not credible on <u>numerous</u> subject matters, and that the verdict reflected that the jury rejected a substantial amount of Petitioner's testimony.  (Sent. Tr. 27-33, Sept. 8, 2003.)  The Court, in imposing a sentencing guidelines enhancement for perjury, noted <u>several</u> instances in which Petitioner willfully and materially provided false testimony at trial, on matters that included: (1) his participation in the criminal enterprise's extortion of others; (2) his participation in a number of meetings convened by members of the criminal enterprise; (3) his extortion of Malamoud; and (4) whether he was a victim of or active participant in the enterprise's criminal activities.  <u>Id.</u>

In sum, the Court finds that counsel's performance relating to Petitioner's testimony about his departure from Lithuania was reasonable.  <u>Strickland</u>, 466 U.S. at 688.  Furthermore, given Petitioner's repeated false testimony on myriad issues, any purported error by counsel in investigating the 1989 asylum application had no effect on the outcome of Petitioner's trial.  <u>Id.</u> at 694; <u>Mosby</u>, 470 F.3d at 519.  Accordingly, the Court denies Petitioner's claim that Mr. Krakow offered ineffective assistance with respect to the 1989 asylum application.

        b.   <u>"Wiretap" Recording of Malamoud</u>

Petitioner argues that Mr. Krakow provided ineffective assistance of counsel when he failed to "independently analyze and translate" a recording of a conversation between Malamoud, a victim of Petitioner's extortion, and Petitioner that was made by Malamoud with a concealed recording device (Pet'r Br. 91-92).  Petitioner also argues that Mr. Krakow provided ineffective assistance when he failed to object to the authenticity of the Malamoud recording. The Court finds no merit to Petitioner's claims.

Counsel's performance with respect to the Malamoud recording was consistent with professional standards of practice.[8]  First, the accuracy of the Government's translation was not in dispute, and thus an independent translation of the recording was not required or appropriate. Petitioner's own testimony at trial made clear that he was not challenging the accuracy of the Government's translation, but instead attempting to explain the <u>context</u> in which he made the recorded threatening statements.  Second, counsel's decision not to object to the authenticity and admissibility of the recording was entirely reasonable.  Malamoud's testimony and the related evidence were sufficient to satisfy all requirements for authentication pursuant to Rule 901 of the Federal Rules of Evidence.  (Trial Tr. 806-07.)  Any objection on the matter would have been without merit.

Accordingly, the court denies Petitioner's claim that Mr. Krakow offered ineffective assistance with respect to the Malamoud recording.

### c.  <u>Attorney Krakow's Representation on Issue of Petitioner's Competency</u>

Petitioner argues that Mr. Krakow provided ineffective assistance of counsel when he failed (1) to investigate Petitioner's mental condition; and (2) to communicate information on Petitioner's mental condition to substitute counsel Mr. Ginsburg.  The Court finds no merit to Petitioner's claims.

### i.  <u>Reasonableness of Investigation into Petitioner's Competency</u>

With respect to Petitioner's claim that Mr. Krakow failed to properly investigate Petitioner's mental condition prior to trial, the Court finds that counsel's representation met all

---

[8] Petitioner's reliance on <u>United States v. Baynes</u>, 687 F.2d 659 (3d Cir. 1982), in support of this ineffective assistance of counsel claim is unavailing.  <u>Baynes</u>, which itself had substantially different facts than the facts of the instant case, was abrogated by the Supreme Court's <u>Strickland</u> decision.  <u>See Morrison v. Kimmelman</u>, 752 F.2d 918, 923 (3d Cir. 1985) (asserting that the <u>Baynes</u> standard for an ineffective assistance of counsel claim is not valid post-<u>Strickland</u>).

professional standards.  In considering counsel's performance on this matter, the Court may consider the American Bar Association (ABA) practice standards for guidance.  See Wiggins v. Smith, 539 U.S. 510, 524 (2003) (noting that Supreme Court has long referred to ABA standards as guides to determining what is reasonable).  The relevant ABA standard states that, when a lawyer has a "good faith doubt" about a client's competency, the lawyer "should move for evaluation of the defendant's competence to stand trial."  ABA Criminal Justice Standard 7-4.2(c).[9]  There is no evidence in the record that Mr. Krakow had a good faith doubt about his client's competency prior to or during trial.  The record shows that Mr. Krakow had numerous conversations with Petitioner throughout the proceedings, and that Petitioner was an active participant in preparing his defense.[10]  Based on the information available to Mr. Krakow at the time of trial, he acted consistently with prevailing professional norms by not investigating or raising the issue of Petitioner's competency.

Mr. Krakow's post-trial conduct further supports a finding that his representation met an objective standard of reasonableness.  The record shows that post-trial events provided Mr. Krakow with a clearer picture of Petitioner's state of mind.  Petitioner began to talk with counsel "more openly post-trial about the voice of God speaking to him."  (Hr'g Tr. 15, Feb. 14, 2003.) In addition, Petitioner first made clear that he thought God was directing him when he told Mr. Krakow that he wished to proceed with post-trial proceedings without legal representation.  In

---

[9] The ABA guidelines also state that, "[i]n the absence of good faith doubt that the defendant is competent to stand trial it is improper for [counsel] to move for [a competency] evaluation." ABA Criminal Justice Standard 7-4.2(e) (emphasis added).

[10] It is apparent that Petitioner made certain decisions against the advice of counsel, including with respect to plea negotiations and the decision to testify in his own defense.  The Court finds that Petitioner's decisions, viewed in the context of Petitioner's active participation in preparing his defense and throughout the proceedings, did not require counsel to raise the issue of competency prior to or during trial.

light of these events, Mr. Krakow reported to the Court his concern about Petitioner's mental condition.  That is, once Mr. Krakow developed a good faith doubt about Petitioner's competency, he properly raised the issue with the Court and argued that a psychological evaluation was warranted.  (Hr'g Tr. 7, Mar. 27, 2001.)

Given these facts, the Court finds that Mr. Krakow met professional practice standards in pursuing the issue of Petitioner's competency.

ii.   Reasonableness of Communications with Substitute Counsel

With respect to Petitioner's claim that Mr. Krakow failed to properly communicate information about Petitioner's mental condition to substitute counsel, the Court finds no evidence in the record supporting such a claim.  The record shows that Mr. Krakow provided – both to substitute counsel and to the Court – all information he had that was relevant to the issue of Petitioner's mental condition at the time of trial and for purposes of sentencing.  (See, e.g., Hr'g Tr. 4, Mar. 27, 2001; Hr'g Tr. 3-5, July 25, 2002; Pet'r Ex. M, Krakow Letter at 3, Aug. 12, 2002.)

Given these facts, the Court finds that Mr. Krakow met professional practice standards in his communicating relevant information to substitute counsel.

iii. Lack of Prejudice to Petitioner

The Court finds that Petitioner suffered no prejudice with respect to Mr. Krakow's representation on the issue of competency.  There is a substantial record supporting the Court's finding that Petitioner was competent, both at the time of trial and for purposes of sentencing. The Court took steps to ensure that Petitioner's mental condition was fairly and comprehensively evaluated, and that Petitioner had the opportunity to challenge any opinions provided by the

Court-appointed psychological and psychiatric experts.  No action taken by counsel would have altered the Court's finding that Petitioner was competent.

The Court's April 2003 determination that Petitioner was competent to stand trial was based upon substantial evidence from psychological and psychiatric experts and the Court's own observation of Petitioner's conduct throughout the proceedings.  See United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995); United States v. Hemsi, 901 F.2d 293, 295 (2d Cir. 1990).  The evidence conclusively established that Petitioner was competent to stand trial and for purposes of sentencing – that is, that Petitioner had a "(1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'"  Nichols, 56 F.3d at 411 (quoting Dusky v. United States, 362 U.S. 402 (1960)); United States v. Vamos, 797 F.2d 1146, 1151 (2d Cir. 1986) (finding defendant's active participation in defending against the criminal charges against her supported a finding of competency); 18 U.S.C. § 4241(d).  This evidence included: (1) the Court-ordered psychological evaluation by Dr. Patenaude and Dr. Fletcher; (2) expert testimony, including considerable cross-examination, of both doctors at the hearing of January 24, 2003;[11] (3) the psychological evaluation of Dr. Kucharski; (4) additional competency proceedings on April 25, 2003; and (5) the Court's observation of Petitioner and its extensive questioning of Petitioner over the course of the proceedings.

The findings of the experts who evaluated Petitioner supported the Court's finding that Petitioner was competent throughout the trial and for purposes of sentencing.  Dr. Patenaude and

---

[11] While the stated purpose of the January 24, 2003 hearing was limited to determination of Petitioner's then-current mental state, the testimony provided by Dr. Patenaude and Dr. Fletcher was probative of Petitioner's mental condition at the time of Petitioner's criminal trial in late 2000.  (See, e.g., Hr'g Tr. 115-16, Jan. 24, 2003.)

Dr. Fletcher opined that Petitioner did not manifest a mental deficiency that would impact his mental functioning or decision-making abilities at the time they evaluated him.  Dr. Kucharski reported that Petitioner was competent at the time of trial and for sentencing.[12]  The Court rejects, as it did during the 2003 competency proceedings, Petitioner's argument that these experts' opinions were improperly affected by bias given their affiliations with BOP.  (Hr'g Tr. 5, Apr. 25, 2003.)  See United States v. Zhou, 428 F.3d 361, 379-80 (2d Cir. 2005) (noting its approval of the court's relying on the "expertise of a forensic psychologist associated with the BOP" as both "reasonable and expeditious").

The Court's own extensive observation of Petitioner's testimony, demeanor, and conduct during the lengthy trial, and at the numerous hearings that followed, led the Court to conclude that Petitioner at all times met the legal standard for competency.  The expert opinion provided by the experts who evaluated Petitioner was entirely consistent with the Court's own assessment. Cf. United States v. Quintieri, 306 F.3d 1217, 1233 (2d Cir. 2002) (noting that a court may rely on its own observation of defendant in determining whether a competency hearing is necessary unless "there is substantial other evidence that the defendant is incompetent").[13]

The Court also finds that the events subsequent to the Court's competency determination – including BOP's investigation into Dr. Patenaude's professional conduct and Dr. Kucharski's supplemental report – do not warrant modification of that determination.  Dr. Fletcher's evaluation and testimony, Dr. Kucharski's report, and the Court's observation of Petitioner during the proceedings provide ample support for a finding that Petitioner was competent to

---

[12] Dr. Drob did not evaluate Petitioner and thus provided no opinion on Petitioner's competency.

[13] The Court recognizes that Petitioner suffers from some mental health problems, including depression and substance abuse.  It is, however, "well established that some degree of mental illness cannot be equated with incompetence to stand trial."  Vamos, 797 F.2d at 1150.

stand trial.  In light of the disclosure of the BOP's investigation of Dr. Patenaude's conduct, the Court took additional precautionary steps to ensure the integrity of the proceedings and the accuracy of the competency determination.  The Court directed Dr. Kucharski to review his original report, to interview Petitioner's trial counsel, and to submit a supplemental report. (Order, D.E. 329 under No. 98 Cr. 727.)  Dr. Kucharski's supplemental report states that (1) Dr. Kucharski's 2003 findings as to Petitioner's competency would be the same without regard to Dr. Patenaude's report, and (2) Dr. Kucharski's further discussion with trial counsel about Petitioner's mental state during trial would not affect his April 2003 findings.  (Order, D.E. 334 under No. 98 Cr. 727.)

In sum, the record makes clear that, even absent any purported errors by Mr. Krakow in his representation of Petitioner, the result of the competency proceedings – a finding the Petitioner was competent – would have been the same.  See Strickland, 466 U.S. at 694; Mosby, 470 F.3d at 519.

iv.  Conclusion

Because Petitioner's claim fails on both prongs of the Strickland test, the Court denies the claim that Mr. Krakow provided ineffective assistance of counsel with respect to the issue of Petitioner's competency.

d.  Attorney Ginsburg's Representation in Competency Proceedings

Petitioner argues that, after Mr. Krakow withdrew as counsel, substitute counsel Mr. Ginsburg provided ineffective assistance by failing to call particular witnesses to testify about Petitioner's mental condition, and to utilize certain available evidence on the matter. Specifically, Petitioner argues that counsel failed (1) to call Mr. Krakow to testify as to

Petitioner's mental condition; and (2) to call Dr. Drob to testify as to Petitioner's mental condition, and to use Dr. Drob's report.  Petitioner's claim is without merit.

### i.   Decision Not to Call Mr. Krakow to Testify

Petitioner argues that Mr. Ginsburg provided ineffective assistance of counsel by failing to call Mr. Krakow to testify about his views of Petitioner's mental condition.

The Court finds that Mr. Ginsburg acted reasonably in deciding not to call Mr. Krakow to testify, as such testimony would have been cumulative.  In this case, the Court was fully aware of Mr. Krakow's views on Petitioner's mental condition through written submissions and discussions at numerous hearings on the matter.  When Mr. Ginsburg offered to provide an affirmation from Mr. Krakow summarizing his views on Petitioner's competency, the Court found that such an affirmation was not warranted.  (Hr'g Tr. 15-16, Feb. 14, 2003.)

Mr. Ginsburg's representation at this stage of the proceedings was reasonable and, in many respects, successful.  For example, he successfully persuaded the Court to (1) appoint Dr. Drob to assist Petitioner in reviewing Dr. Patenaude's report, and (2) appoint Dr. Kucharski to conduct an independent evaluation of Petitioner.  In the process, Mr. Ginsburg acted reasonably in deciding not to present what would have been cumulative testimony from Mr. Krakow.

### ii.   Decision Not to Call Dr. Drob or to Use Dr. Drob's Report

Petitioner argues that Mr. Ginsburg provided ineffective assistance of counsel by (1) failing to call Dr. Drob to testify, and (2) failing to use Dr. Drob's report as evidence intended to show that Petitioner was not competent at the time of trial.

The Court finds that Mr. Ginsburg acted reasonably in deciding not to call Dr. Drob to testify, and in not seeking to admit Dr. Drob's report during the competency proceedings.  The record shows that the Court permitted the defense to retain Dr. Drob only for the purposes of

17

having him (1) review Dr. Patenaude's report, and (2) assist the defense at a subsequent hearing. (Memo Endorsement, Aug. 17, 2002, D.E. 239 under No. 98 Cr. 727.)  Dr. Drob did not evaluate Petitioner, and his report does not reach any specific conclusion as to Petitioner's competency. (Pet'r Ex. P, Drob Report, Jan. 9, 2002.)  Mr. Ginsburg used Dr. Drob's assistance in arguing – successfully – that an independent psychological evaluation was required.  Mr. Ginsburg properly decided not to call Dr. Drob to testify, and not to use Dr. Drob's report, in arguing the issue of Petitioner's competency.[14]

### iii.  Lack of Prejudice to Petitioner

In any event, Petitioner was not prejudiced by Mr. Ginsburg's decisions with respect to Dr. Drob's testimony and report.  The record makes clear that, even absent any purported error by Mr. Ginsburg, the result of the competency proceedings would have been the same.  See Strickland, 466 U.S. at 694; Mosby, 470 F.3d at 519.

### iv.  Conclusion

Because Petitioner's claim fails on both prongs of the Strickland test, the Court denies Petitioner's claim that Mr. Ginsburg's representation was ineffective.

### 3.  Conclusion

The Court finds that Petitioner's claims that his trial counsel, both at trial and in the course of post-trial proceedings, provided ineffective assistance are without merit.  Accordingly, the Court denies Petitioner's claims of ineffective assistance of trial counsel.

### C.  Ineffective Assistance of Appellate Counsel

---

[14] Mr. Ginsburg in fact requested that the Court appoint Dr. Drob to conduct the independent psychological evaluation.  Upon hearing the Government's objection, the Court denied Mr. Ginsburg's request, and appointed Dr. Naomi Goldstein to conduct the evaluation.  (Hr'g Tr. 15-16, Feb. 14, 2003.)  Dr. Kucharski subsequently replaced Dr. Goldstein.  Because Dr. Drob did not evaluate Petitioner, his testimony at the competency proceedings was not warranted.

Petitioner claims appellate counsel provided ineffective assistance by failing to raise the issue of Petitioner's competency on appeal.  Petitioner's claim is without merit.

1.  Legal Standard

A claim of ineffective assistance of appellate counsel is analyzed using the same test that applies to a claim of ineffective assistance of trial counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  To prevail, a petitioner must show that: "[1] [appellate] counsel's representation fell below an objective standard of reasonableness, and [2] there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) (per curiam) (citing Strickland, 466 U.S. at 688, 694) (internal quotation marks omitted).  A court reviewing appellate counsel's performance must therefore make "'every effort … to eliminate the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 688-89).

2.  Application of Legal Standard to Facts

The Court finds that appellate counsel's decision not to challenge the Court's competency determination in Petitioner's direct appeal was objectively reasonable and did not prejudice Petitioner.  Petitioner's claim of ineffective assistance of appellate counsel is therefore without merit.

As discussed above, the issue of competency was carefully considered by this Court. Based on the extensive record that strongly supported the Court's finding that Petitioner was competent at all stages of the criminal proceedings, there is no "reasonable probability" that an appeal on this issue would have been successful before the appellate court.  See Mayo, 13 F.3d at

19

534; see also Zhou, 428 F.3d at 381 (finding no abuse of discretion on the part of the trial court in determining that defendant was competent based on two psychologists' conclusion that defendant was competent for both trial and sentencing, as well as the trial court's own observation of defendant).

Petitioner's appellate counsel provided strong, and on some matters, successful representation on behalf of Petitioner.  Counsel raised a number of substantial issues on appeal, including (1) whether the Government's use of co-defendants' plea allocutions without cross-examination violated Petitioner's rights under the Confrontation Clause; (2) whether the evidence supported Petitioner's conviction on the arson conspiracy count; (3) whether this Court erred in denying Petitioner's pre-trial motion for severance; (4) whether this Court erred in denying a motion to dismiss certain counts in the indictment on the ground of multiplicity; and (5) whether the Court's application of the United States Sentencing Guidelines was improper. Appellate counsel successfully argued that the admission of the plea allocutions was in error and obtained a grant of remand on the issue of sentencing.  See United States v. Kiltinivichious, No. 03-1577, 2005 WL 1316998 (2d Cir. June 1, 2005).

    3.  <u>Conclusion</u>

There is no evidence that appellate counsel's performance fell below an objective standard of reasonableness with respect to the decision not to appeal this Court's competency determination, or that the raising of the competency issue would have resulted in a different outcome.  See Lynn, 443 F.3d at 247.  Accordingly, the Court denies Petitioner's claim of ineffective assistance of appellate counsel.

    D.  <u>Due Process Rights Relating to the Competency Determination</u>

Petitioner argues that he was denied his substantive and procedural due process rights under the Fifth Amendment because the Court improperly determined that he was competent.

As discussed below, the Court denies Petitioner's claim because (1) Petitioner failed to challenge the Court's competency determination in his direct appeal, and (2) Petitioner has failed to establish "cause" for the failure to raise the issue on appeal and "actual prejudice" resulting from the alleged error.

1.  Legal Standard

It is well established that federal prisoners may not employ Section 2255 as a substitute for a direct appeal.  See United States v. Frady, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."); see also United States v. Addonizio, 442 U.S. 178, 184-85 (1979). As the Supreme Court explained in Frady, "[o]nce the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume [the defendant] stands fairly and finally convicted, especially when . . . he already had a fair opportunity to present his federal claims to a federal forum."  456 U.S. at 164.  A petitioner who did not raise his claims on direct appeal is therefore procedurally barred from obtaining habeas relief unless he establishes "cause" for the failure to raise the issue on appeal and shows "actual prejudice" resulting from the alleged error.  Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)); see also United States v. Warren, 335 F.3d 76, 79 (2d Cir. 2003).  The purported "cause" for non-compliance with the direct appeal requirement "must be something external to the petitioner, something that cannot be fairly

attributable to him." Coleman v. Thompson, 501 U.S. 722, 753 (1991).[15]  The element of prejudice requires "not merely that the errors at [] trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."  Femia v. United States, 47 F.3d 519, 524 (2d Cir. 1995) (quoting Frady, 456 U.S. 152, 170 (1982)) (emphasis in original).[16]

        2.  Application of Legal Standard to Facts

Petitioner has presented no evidence that shows: (1) cause for his failure to raise the competency issue on appeal; and (2) that Petitioner suffered actual prejudice as a result.

First, the Court finds that Petitioner has failed to establish cause for his failure to challenge in his direct appeal the finding that he was competent.  Petitioner argues that the ineffective assistance of counsel establishes cause for this failure.  (Pet'r Br. at 77.)  The Court has rejected Petitioner's claims of ineffective assistance of counsel.  See Parts II.B & II.C, supra. The Court can discern no other basis for a finding of cause for Petitioner's failure to challenge the Court's competency determination in his direct appeal.

Second, the Court finds no grounds for a finding of actual prejudice resulting from such omission.  As discussed above, the Court's finding on the issue of Petitioner's competency is

---

[15] Ineffective assistance of counsel in violation of the Sixth Amendment may be a sufficient "external factor" to establish cause for a failure to raise an issue on appeal.  See Restrepo v. Kelly, 178 F.3d 634, 640-41 (2d Cir. 1999) (citing Coleman, 501 U.S. at 753-54).

[16] The Supreme Court has also made clear that, absent a showing of cause, relief may still be available where a constitutional error "has probably resulted in the conviction of one who is actually innocent."  Bousley v. United States, 523 U.S. 614, 623 (1998); see also McCleskey v. Zant, 499 U.S. 467, 494 (1991) (stating that habeas relief may also be available under "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime").  Petitioner has not claimed actual innocence.  He therefore must establish cause and prejudice for his failure to raise the competency issue in his direct appeal.

well supported by the evidentiary record, and no events since the time of the Court's competency determination cast doubt on that determination.

Accordingly, the Court denies Petitioner's claim that his due process rights were violated with respect to the Court's determination that he was competent to stand trial.[17]

### E. *Brady* and *Giglio* Claims

Petitioner's final claim is that the Government failed to produce two items pursuant to its Brady and Giglio obligations and 18 U.S.C. § 3500. Specifically, Petitioner claims that the Government failed to produce (1) an FBI-302 report of an interview with Ernest Malamoud; and (2) evidence that Petitioner had been assaulted in December 1997 by an organized crime group. The Court finds Petitioner's claims to be without merit.

#### 1. Legal Standard

The Government has a constitutional obligation to disclose to a criminal defendant, in a timely fashion, favorable evidence that is in the Government's possession or of which the Government is constructively aware, when such evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). Similarly, the Government has an obligation to disclose to a defendant evidence that may be used to impeach a prospective witness, when the reliability

---

[17] The Court also rejects Petitioner's argument that he was deprived of procedural due process based on the Court's denial of an additional competency hearing following the April 25, 2003 hearing. (Pet'r Br. 72-77.) Throughout the proceedings, this Court has been mindful of the Constitutional principle that "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." See Smith v. Fischer, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2006) (citing Drope v. Missouri, 420 U.S. 162, 172 (1975)). The Court took numerous steps to ensure a full and fair hearing on Petitioner's mental condition, including: (1) ordering multiple psychological evaluations in light of defense counsel's expressed concerns about Petitioner's mental condition; (2) granting defense counsel's request to retain an expert to review the findings from those evaluations; and (3) conducting multiple hearings, with extensive testimony and oral argument, on the issue of Petitioner's competency. An additional competency hearing was not warranted.

of that witness could be determinative of the defendant's guilt or innocence.  See <u>United States v.</u>
<u>Madori</u>, 419 F.3d 159, 170 (2005) (citing <u>Giglio v. United States</u>, 405 U.S. 150 (1972)).

      The Government has a duty to disclose only that information which is "known to the
prosecution but unknown to the defense."  <u>United States v. Grossman</u>, 843 F.2d 78, 85 (2d Cir.
1988).  The Second Circuit has made clear that "[e]vidence is not 'suppressed' if the defendant
either knew, or should have known, of the essential facts permitting him to take advantage of any
exculpatory evidence."  <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 2001) (internal citation and
quotation marks omitted); <u>see also</u> <u>United States v. Ruggiero</u>, 472 F.2d 599, 604-05 (2d Cir.
1973).

      2.  <u>Application of Legal Standard to Facts</u>

      With respect to Petitioner's claim regarding the Malamoud FBI-302 report, the record
establishes that the Government <u>did</u> produce a copy of the FBI-302 report.  Petitioner's trial
counsel in fact used the report in its cross-examination of Malamoud.[18]  (Trial Tr. 920.)  The
Government thus complied with its obligations by producing the FBI-302 report.

      With respect to Petitioner's claim that the Government failed to produce evidence that
Petitioner was assaulted and kidnapped in December 1997 by an organized crime gang, the Court
finds that the Government had no duty to disclose this information to Petitioner because it was
(1) already known to Petitioner and (2) unrelated to the question of his guilt or innocence.  This
evidence did not constitute <u>Brady</u> or <u>Giglio</u> material.  See <u>Grossman</u>, 843 F.2d at 85 (noting that

---

[18] Petitioner's belief that the Government failed to produce this report could be due, in part, to
the fact that the Court entered a protective order during trial precluding Petitioner from
possessing in prison certain documents provided pursuant to Section 3500.  Petitioner has
previously demonstrated confusion about his inability to possess such documents in prison.
(Hr'g Tr. 8-11, Nov. 12, 2002.)

the Government is obligated to disclose only evidence <u>unknown</u> to the defense).  Petitioner, as the victim of the assault and kidnapping, had full knowledge of the incident.[19]  Additionally, the Government had no obligation to disclose this information to Petitioner because the assault and kidnapping were not relevant to the Government's case against Petitioner; they were wholly unrelated to the criminal scheme for which Petitioner was prosecuted.  (Trial Tr. 1765-66.)

Accordingly, the Court denies Petitioner's <u>Brady</u> and <u>Giglio</u> claims.

III.   <u>Conclusion</u>

For the reasons set forth above, the Court DENIES Petitioner's motion to vacate, set aside, or correct his sentence pursuant to Section 2255.[20]  A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right.  <u>See</u> 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

The Clerk of the Court is ordered to close this case.  Any pending motions are moot.

SO ORDERED.

Dated: New York, NY
September _13_ , 2010

_____
KIMBA M. WOOD
United States District Judge

---

[19] Petitioner himself testified about the assault and kidnapping at trial.  (Trial Tr. 1765-67.)

[20] The Court also denies Petitioner's request for the appointment of counsel.  (D.E. 340 under No. 98 Cr. 727.)  Appointment of counsel in habeas cases is not required where, as is the case here, no evidentiary inquiry is warranted.  <u>See</u> <u>Harrison v. Senkowski</u>, 247 F.R.D. 402, 414 (E.D.N.Y. 2008) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987)).

25